UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SURREY PROPCO LLC,

                 Plaintiff,

     -against-                                         21-cv-8616 (LAK)

DENIHAN OWNERSHIP COMPANY, LLC,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

        Appearances:

                        Peter D. Raymond
                        Samuel Kadosh
                        Jonathan D. Gordon
                        REED SMITH LLP
                        *Attorneys for Plaintiff*


                        Kristen McCallion
                        John S. Goetz
                        Vivian Cheng
                        Jenifer deWolf Paine
                        Ryan Steinman
                        FISH & RICHARDSON P.C.
                        *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        The Surrey hotel, long operated by Denihan Ownership Company, LLC ("Denihan")

directly or through affiliates in premises leased by Denihan from a stranger to this litigation (the

"Seller"), was among the casualties of the COVID pandemic, shuttering its doors several years ago.

After it closed, the owner of the property sold the real estate to Surrey Propco LLC ("Propco"). Propco here sues Denihan principally for alleged infringement and unauthorized use of THE SURREY, the mark under which Denihan long had done business and which both Propoco and Denihan here claim to own. The fundamental question presented on Denihan's motion for judgment on the pleadings dismissing the complaint is whether Propco acquired THE SURREY mark by virtue of its acquisition of the real estate on which Denihan formerly operated *The Surrey* hotel.

*Facts*

For purposes of Denihan's motion for judgment on the pleadings, the Court assumes the truth of the allegations of the complaint and draws in Propco's favor all inferences reasonably drawn from them.[1]

*The Surrey Hotel, Denihan, and the Seller*

On or around February 1, 1971, the Seller's predecessor, 22 East 76th, Inc., leased the relevant premises to Lydon Hotel Co. to operate *The Surrey* hotel (the "1971 Lease").[2]   The

---

[1]  The Court excludes all materials other than the complaint, documents incorporated by reference in the complaint in or integral to the complaint are provided by the parties), or facts of which the Court may properly take judicial notice on this motion.  It thus declines to convert the motion into one for summary judgment.

[2]  The standard applicable on a motion for judgment on the pleadings on a Rule 12(b)(6) motion to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, to survive a defendant's Rule 12(c) motion, a plaintiff must plead sufficient facts, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In this posture, the only materials the Court may consider are the pleadings themselves, documents attached to or integral to the complaint, and any other matters of which the Court can take judicial notice. *See, e.g., Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 172 (N.D.N.Y. 2011) ("Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), a

complaint, which details a series of subsequent lease assignments and one change of ownership, alleges that the Seller's contractual relationship with Denihan (or Denihan's affiliates) began at least as early as January 2000 and was governed principally by the terms of the 1971 Lease.[3]

In or around spring 2005, the Seller initiated communications with Denihan regarding the condition of the hotel premises. According to the complaint, "on or around April 11, 2005, the parties met to discuss the condition of the Surrey Hotel, and Lessee acknowledged that it would need to spend significant money to renovate the Surrey Hotel to maintain the agreed brand standards" as set out in the Lease.[4] When no renovations were made, the Seller delivered to Denihan a notice to cure, informing Denihan both that it had failed to comply with its lease obligations and that the Seller intended to terminate the lease unless Denihan cured defaults within the prescribed cure period.

In response to that notice, Denihan brought an action in New York County Supreme

---

court may consider the following matters outside the four corners of the complaint without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference in the complaint, are 'integral' to the complaint (and are provided by the parties), or (4) any matter of which the court can take judicial notice for the factual background of the case."); *see also, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The Court excludes any other materials before it and thus declines to convert the motion into one for summary judgment.

[3]    Compl. ¶¶ 20, 21.

    Propco contends that the Lease created no more than a license "allow[ing] use by the Tenant of the trademark, as a matter of law, for the Lessor's benefit as the trademark owner." *Id.* ¶ 15.

[4]    *Id.* ¶¶ 19-26.

Court to enjoin termination.[5]  The Seller, in turn, brought a number of counterclaims against the Denihan affiliate.  The state court litigation eventually resolved in or around June 2008 when the parties entered into an amendment to the lease under which Denihan agreed to renovate the premises at its own expense pursuant to pre-approved specifications while reaffirming its obligations under the original lease to maintain and operate the premises "as a first[] class hotel or apartment hotel."[6]

*Denihan Registers the Mark*

Propco alleges that Denihan, while the state court litigation was pending, "surreptitiously and underhandedly sought and acquired a federal registration for THE SURREY," which the USPTO issued on February 6, 2007.[7]  The complaint alleges that it did so by fraud, having "falsely declared  that [Denihan] was the owner of the trademark."[8]  It asserts that the "[d]efendant and its representatives intentionally concealed its acquisition of a fraudulent registration for THE SURREY from" the Seller.

*The Sale-Purchase Agreement*

As noted, Denihan closed the hotel in the midst of the pandemic, and the lease

---

[5]  *See 20 East 76th Street Co., LLC v. Surrey Realty Associates, LLC*, Index No. 604138/06 (N.Y. Sup. Ct. N.Y. Cnty.).

[6]  *Id.*  ¶¶ 33-36.

[7]  *Id.*  ¶ 38.

[8]  *Id.*  ¶¶ 38, 91.

subsequently was terminated.[9]

        On or around December 3, 2020, the Seller and Propco entered into a Sale-Purchase Agreement ("SPA") pursuant to which Propco acquired the premises at 20 East 76th.  Surrey insists that it thus acquired "both the physical property and intellectual property associated with the Surrey Hotel," alleging that the "Seller believed that [Denihan] had utilized THE SURREY only to benefit Seller as owner of the trademark."[10]  In the interests of avoiding unnecessary repetition, we defer description of the material terms of the SPA to the analysis below.

*Alleged Unauthorized and Infringing Use*

        Propco attributes a range of purportedly unauthorized and infringing uses of THE SURREY trademark to Denihan, including: using and maintaining  www.thesurrey.com, using the @thesurrey.com email domain name and @surreyhotelnyc Instagram handle, fielding inquiries about long-term state acommodations and billing, and trading on the mark's goodwill to attract potential customers through the website and by other means.[11]  It claims that Denihan generated $7 million in revenue from its use of *The Surrey* hotel website in 2020 alone.

*The Pleadings and the Motion*

        Propco's complaint asserts three causes of action.  The first is for federal trademark infringement in violation of the Lanham Act.  The second seeks a declaration that Propco owns the

---

[9]
     *Id.* ¶ 17.

[10]
     *Id.* ¶¶ 48, 49.

[11]
     *Id.* ¶¶ 52-63.

6

THE SURREY mark by virtue of its purchase of the real estate.  The third seeks cancellation of

Denihan's federal registration on account of fraud.  Propco asks the Court to enjoin Denihan's use

of THE SURREY trademark, to declare Propco's exclusive ownership in that mark, to order

Denihan to assign its registration or, in the alternative, order the USPTO to cancel Denihan's

registration, and, finally, to award treble damages pursuant to 15 U.S.C.  § 1117 for willful and

intentional violations.

Denihan has interposed a counterclaim seeking a declaration that it owns THE

SURREY .

Denihan now moves for judgment on the pleadings dismissing Propco's first and

second claims for failure to state a claim upon which relief may be granted and to dismiss the third

claim for want of subject matter jurisdiction on the basis that Propco lacks standing to seek

cancellation in view of its lack of any ownership interest in the mark.  It seeks also a determination

that this is an "exceptional case" under Section 35 of the Lanham Act.

*Discussion*

All three of Propco's claims converge on a shared threshold question: Whether

Propoco plausibly has alleged ownership of THE SURREY mark.[12]  The Court holds that it has not.

---

[12] To state a claim for trademark infringement under the Lanham Act, a plaintiff must plausibly allege that it owns the mark at issue. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005); *Int'l Labels LLC v. Sportlife Brands LLC*, No 19-CV-11370 (AJN), 2021 WL 1198890, at *7 (S.D.N.Y. Mar. 30, 2021).  To the extent that the complaint may be construed as asserting a Section 43(a) claim for "false designation of origination," the "plaintiff must establish ownership of, or a superior right to use, the mark in question." *Muniz v. Morillo*, No. 06 Civ. 6570 (RJS), 2008 WL 4219073, at *5 (S.D.N.Y. Sept. 10, 2008).

*The SPA Did Not Convey Intellectual Property*

      The plain text of the SPA leaves no ambiguity as to what the Seller conveyed to Propco:

      (a) the parcel of land commonly known as 20 East 76th Street, New York, New York (Block: 1390, Lot 57) . . . ("**Land**"); (b) all buildings and improvements situated on the Land (collectively, "**Building**"); (c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway; and (d) the appurtenances and all the estate and rights of Seller in and to the Land and Building (collectively, the "**Premises**" or "**Property**"). For purposes of this Contract, "**appurtenances**" shall include all right, title and interest of Seller, if any, in and to (i) streets, easements, rights-of-way and vehicle parking rights used in connection with the Premises; (ii) any strips or gores of land between the Land and abutting or adjacent properties; (iii) air rights and development rights, if any; and (iv) the fixtures, systems, machinery, and equipment attached to the Land or the Building owned by Seller (the "**Personal Property**"), excluding therefrom (x) the Contested Personalty (hereinafter defined), (y) all personal property, fixtures, systems, machinery, and equipment on the Property owned by the Former Ground Tenant (hereinafter defined) under the ground lease (the "**Ground Lease**") between Seller and 20 East 76th Street Co., LLC d/b/a The Surrey Hotel (the "**Former Ground Tenant**"), dated February 1, 1971, as amended, to the extent not included in Contested Personalty, and (z) all personal property, fixtures, systems, machinery,

and equipment of any Tenants (hereinafter defined) at the date hereof.[13]

In short, Propco purchased the "Premises" or "Property" at 20 East 76th Street in Manhattan, which – as defined in the agreement – did not include any intellectual property.  The rights and interests that Propco acquired are specifically enumerated in the SPA, and none of them is even arguably construable as including intellectual property.[14]  Quite obviously, THE SURREY trademark is not a right *in or to* the "Land" or "Building" itself, and neither party suggests otherwise.  Propco asserts only that the rights to a hotel's name typically "run with the building," not that naming rights are subsumed within the real property itself.[15]  Neither can the trademark be an "appurtenance" as defined by the SPA, which similarly enumerates the categories of rights, title, and interest to which that term refers.  By enumerating under "appurtenances" the transfer of those interests such as "air rights," "easements," and "vehicle parking rights used in connection with the Preimses," the SPA reaffirms that such ancillary rights used in connection with the operations of the Hotel are separate and distinct from "the estate and rights . . . in and to Land and Building (collectively, the '**Premises**' or '**Property**')."[16]  Accordingly, Propco's assertion that the words "the appurtenances and all the estate and rights of [the Prior Owner] in and to the Land and Building"

---

[13] SPA [Dkt. 48-1] at 1 ("Recitals").

[14] *See e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (clarifying that the canon of construction "*expressio unius est exclusio alterius*" applies to contract interpretation).

[15] Dkt. 46 at 14 (quoting *City o N.Y. v. Tavern on the Green, L.P.*, 427 B.R. 233, 241 n.5 (S.D.N.Y. 2010)).

[16] It is a basic tenet of New York contract law that courts should avoid interpretations that render contract terms superfluous.  *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir.2005); *R&D Hotel, LLC v. McDonald's USA, LLC*, No. 15-CV-08359 (LAK), 2016 WL 3866408, at *2 (S.D.N.Y. July 12, 2016).

necessarily include "all of the associated intellectual property" is plainly at odds with the contract definitions to which the Seller and Propco agreed in writing.

That the SPA did not convey any intellectual property is readily apparent from the above conveyance language.  Even so, other parts of the agreement add significant weight to that conclusion.  For instance, in the SPA's representations and warranties, the Seller expressly disclaimed any representation or warranty as to "the existence, ownership and availability of any intellectual property, including, without limitation, patents, tradenames (including without limitation, the 'Surrey Hotel' name), and trademarks that may or may not have been used in connection with the Property."[17]  The Court cannot reasonably interpret the SPA as conveying property that the Seller expressly carved out from its representations of ownership, to say nothing of its refusal to represent or warrant that mark's very existence.

The Seller represented also that it was "not in control of the Property," had "limited knowledge of the operation of the hotel on the Premises," and had "no responsibility for any acts of, or failure to act" by the hotel's actual operator: Denihan.  Because the standard test for ownership of a trademark is priority of use,[18] which generally is "determined by use of the mark in commerce coupled with control of the quality of the goods,"[19] the Seller's express disclaimer of knowledge and control over what Propco refers to as "brand standards" undermines the suggestion that Seller had

---

[17]     SPA § 20(a)(xiii).

[18]     *Int'l Labels LLC*, 2021 WL 1198890, at *5; *see ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154–155 (2d Cir. 2007) ("[T]rademark rights are acquired by, and dependent upon, priority of use.").

[19]     *Dodoni v. Fantis Foods, Inc.*, No. 14-cv-9179 (LAK), 2015 WL 1029651, at *5 (S.D.N.Y. Mar. 10, 2015).

been the exclusive owner of THE SURREY trademark at the time of the sale.  It certainly undercuts the plaintiff's view that the Seller "believed that Denihan's Affiliate had only utilized The Surrey to benefit Prior Owner subject to a trademark license," although the Court notes that Propco's "beliefs" as to what the Seller believed it sold to Propco are irrelevant to the extent they do not cohere with the unambiguous writing.  While Court need not determine whether the Seller in fact owned THE SURREY trademark at the time of the SPA in order to conclude that no intellectual property transferred to Propco under that agreement, the Seller's representations and warranties supply further support for the inevitable conclusion that the party exercising control over the quality of goods or services was someone other than the Seller.

What is more, the complaint itself acknowledges that Section 11 of the SPA specifically required the Seller to *ask* Denihan for an assignment of Denihan's trademark registration after the closing of the Sale.  The relevant language reads: "After the Closing, Seller shall request from [Denihan] an assignment of the service mark registration for the 'Surrey Hotel' in a form requested by Purchaser."[20]  Nothing in the SPA suggests that successful execution of such an assignment was a condition of the sale.  If anything, Section 11 suggests that at least one of the parties thought Denihan's registration valid and that some post-closing assignment would be necessary for Propco to properly acquire the intellectual property associated with the hotel, which had already ceased operations when Propco purchased the premises.  Even if that view were mistaken, the language of the contract would be entirely consistent with what Propco itself notes was the Seller's motivation reflected in the writing: "to avoid potential liability and/or becoming

---

[20] SPA § 11.

entangled in litigation between Propco and Denihan."[21]   There would have been no need to ask

Denihan for an assignment had both parties intended for the defined term "Premises" to include

intellectual property owned in the manner alleged in the Complaint.

Accordingly, Propco's arguments that "the plain language of the SPA confirms that

the Prior Owner sold and conveyed to Propco not only the physical property . . . but also all of the

associated intellectual property" simply cannot be reconciled with the unambiguous text of the

contract.  When a contract governed by New York law is unambiguous, the meaning of that contract

"is a question of law that the Court may decide" on a Rule 12(b) or Rule 12(c) motion.[22]  Propco

cannot manufacture ambiguity where none exists by referring to parol evidence or advancing

contract interpretations that "strain [] the contract language and beyond its reasonable and ordinary

meaning."[23]

*Propco Misapprehends the Centrality of "Use" Both*
*in the Common Law of Trademark and the Lanham Act*

Propco argues also – principally under a 1926 Appellate Division case, *Stogop Realty*

*Co. v. Marie Antoinette Hotel Co.*[24] – that "even if it were true that the '[the Purchase Agreement]

---

[21]

    Dkt. 46 at 15-16.

[22]

    *Morgan Art Found. Ltd. v. Brannan*, No. 18CV8231ATBCM, 2020 WL 469982, at *8-*13 (S.D.N.Y. Jan. 28, 2020); *see* SPA ¶ 29 ("This Agreement shall be governed by, interpreted under and construed and enforced in accordance with, the laws of the State of New York, without reference to conflicts of laws principles.").

[23]

    *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 459 (1957)).

[24]

    217 App. Div. 555 (1st Dep't 1926).

is clear that only the 'Premises' was sold . . . [,]' Propco's acquisition of the hotel standing alone is sufficient to establish that it acquired ownership of a trademark right in the name *The Surrey*" because "the right to [a named building's] trademark attaches to the physical premises" and cannot be severed from it.[25] Thus, Propco submits, "a party that acquires the physical premises also acquires the right to the trademark" as a matter of law, irrespective of the contract language.[26]

The cases Propco cites for the proposition that a hotel's name rights "run with the building" are unavailing for several reasons.  First, the substantive rule that Propco attempts to distill from *Stogop* misapprehends trademark law's central emphasis on *use*, which undergirds the common law trademark ownership – and, by extension, the transfers of ownership – at issue in those cases. As discussed above, the standard test for ownership of a trademark is priority of use,[27] generally "determined by use of the mark in commerce coupled with control of the quality of the goods."[28] While pre-Lanham Act courts often asked whether a business's goodwill runs "personal to the tenant" or "local to the place" (i.e, to the owner of the building) upon transfer, that question presupposed that (1) the competing claims to ownership were not resolved by unambiguous contract

---

[25]    Dkt. 46 at 10-11.

[26]    *Id.*

[27]    *Int'l Labels LLC*, 2021 WL 1198890, at *5; *see ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154–155 (2d Cir. 2007) ("[T]rademark rights are acquired by, and dependent upon, priority of use.").

[28]    *Dodoni v. Fantis Foods, Inc.*, No. 14-cv-9179 (LAK), 2015 WL 1029651, at *5 (S.D.N.Y. Mar. 10, 2015).

terms and (2) both parties in fact had used the name or mark in commerce.[29]

Where naming rights to a leased building are contested, "[o]wnership of a mark identifying a business carried on at rented premises will depend on an informed balancing of the policies of customer perception and contractual provisions."[30] But as one scholar recently observed, "trademark doctrine . . . only sanction[s] this kind of inquiry between the two parties if [one] can credibly view the landlord as having used the name in commerce."[31] Once again, Propco has not plausibly alleged either that it or the Seller ever operated, marketed, or otherwise transacted in commerce in connection with *The Surrey* name.   In *Stogop*, it was undisputed that the seller previously had operated the Marie Antoinette Hotel himself for the better part of a decade before licensing both the premises and the name to a lessee for a temporary period.[32] And anticipating his use of that name in commerce as the hotel's operator, he had designed and constructed the building with iron gates, gratings, doors, and doorknobs bearing the hotel's initials, and with stone work over

---

[29]

See generally Justin Hughes, *Landmark Trademarks*, 52 WAKE FOREST L. REV. 1163, 1179-81 (2017) (discussing prevailing pre-Lanham framings).

[30]

See, e.g., *Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581, 597 (E.D. La. 2018) (quoting 2 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, § 16:38 (4th ed. 2010)). Of course, basic New York contract law forbids courts from "balancing" or otherwise looking beyond contract provisions unless the agreement at issue is ambiguous, which the SPA is not.

[31]

See Hughes, *supra*, at 1179-80 (suggesting also that the notion that certain trade names are capable of "attaching to a place . . . regardless of its ownership" is an outmoded approach "seen in pre-Lanham cases" like *Stogop*, which "truly were landlord-tenant disputes . . . quite often about hotel names").

[32]

See *Stogop Realty Co.*, 217 App. Div. at 557.

the entrance bearing its name.[33]

Still more important, the *Stogop* court ultimately resolved the competing claims with reference to the parties' underlying contractual relationship.[34]  Unlike the 1971 Lease agreement in this case, the *Stogop* lease explicitly licensed exclusive use of the name "Marie Antoinette Hotel" for a temporary period, adding that "the right to use the name shall revert and become the sole property of the [lessors], and their successors or assigns" upon conclusion.  Here, Propco has alleged nothing resembling a clear and express license or control by the Seller, either through the lease or in fact.[35]  That the Seller brought claims against Denihan over the conditions of the hotel in 2006 is irrelevant, since none of the allegations concerned a failure to maintain standards associated with THE SURREY trademark as distinct from the more general obligation to maintain a "first-class hotel."  As Denihan points out, the Seller affirmatively disclaimed control over the name and operation of the hotel during the 2006 litigation over the condition of the premises.  The Seller conceded its lack of exclusive control over the hotel's name in its own pleadings, acknowledging that Denihan could have used a more prestigious brand name associated with Denihan, "Affinia,"

---

[33]

  The *Stogop* decision itself is undergirded by the notion that "the name established for a hotel is a trade-mark in which *the proprietor* has a valuable interest which a court will protect" and that "[a] party will be protected in *the use of a name which he has rendered valuable.*" *Stogop Realty Co.*, 217 App. Div. at 563-64 (citations and internal quotation marks omitted) (emphasis added).

[34]

  While *Stogop* also focuses on deed language set out in § 255 of New York's Real Property Law ("together with the appurtenances and all the estates and rights of the party of the first part in and to said premises"), the Fourth Department has made clear that § 255's generally inclusive approach to "estate" and "appurtenances" in a deed  nonetheless is subject to contractual reservation. *See Patouillet v. State*, 39 A.D.2d 1012 (4th Dept. 1972).  Thus, at least where there is an unambiguous writing, is the parties' agreed upon enumeration of the applicable rights, title, and interest that controls.

[35]

  *See* Compl. ¶ 17; *id.* Ex. 4 (Surrey Hotel Lease §§ 25.02, 28.01).

in connection with the leased Premises, but ultimately declined to do so:

> "Plaintiff's principals state that 'Affinia' branded hotels are 'a collection of distinctive hotels' and . . . [a] badge of distinction. They have not, however, given the Surrey Hotel their Affinia brand name, and thus do not consider the Surrey Hotel to be 'distinctive,' much less a first class hotel as the Surrey Lease mandates."[36]

The rather obvious implication is that Denihan not only possessed exclusive control over the hotel's name, but that the Seller viewed the decision *not to change the name* – rather than a failure to maintain THE SURREY's "brand standards" – as evidence of breach.

Propco's other cases are similarly distinguishable. In *Norden Rest. Corp v. Sons of the Revolution*,[37] a former tenant claimed it had acquired an exclusive right to use the name "Fraunces Tavern" because it had used the name for over forty years and had obtained federal registration of a trademark. But the New York Court of Appeals rejected that claim because, unlike here, "the *provisions of the lease negotiated* clearly establish[ed]" the defendant's ownership and control of the name, namely through clauses requiring the defendant to obtain the landlord's written approval prior to operating under another name and providing that the "right to use the name 'Fraunces Tavern Restaurant'" . . . shall terminate upon the expiration or earlier termination of this Lease."[38] The same is true of *City of N.Y. v. Tavern on the Green*,[39] which Propco invokes for the

---

[36]      Answer ¶ 78 [Dkt. 45, Ex. 10], *20 East 76th Street Co., LLC v. Surrey Realty Associates, LLC*, Index No. 604138/06 (N.Y. Sup. Ct. N.Y. Cnty.).

[37]      51 N.Y.2d 518 (1980).

[38]      *Id.* at 522-23 (emphasis added).

[39]      427 B.R. 233 (S.D.N.Y. 2010).

proposition that "the traditional view in New York" is that "the goodwill and rights to the name of [sic] public building run with the building."[40] The district court plainly decided *Tavern on the Green* with reference not only to "undisputed facts show[ing] that the City established and continuously maintained a restaurant under the name 'Tavern on the Green' at the same location . . . since 1934," but also to the explicit license it had granted to the restaurant operator that, among other things, expressly affirmed "the City's interest in the . . . name," authorized the City to oversee management and operations (which it in fact did), and expressly required the City's written approval to change the name of the restaurant.[41]

To the extent that Propco implies that business goodwill in a hotel is *sui generis* as "[t]he good will of a public building,"[42] the Court notes also that it is only on account of the possibility that an operator or concessionaire can come to acquire the intellectual property associated with a historically significant site or building that Congress in recent decades has carved out special protection for the names of designated historic places and public landmarks.[43]

Despite the handful of century-old cases with favorable dicta, Propco's assertion that "the use of a name of a hotel is inseparably associated with the hotel premises" as a matter of law

---

[40]  Dkt. 46 at 14 (citing *Tavern on the Green*, 427 B.R. at 241 n.5).

[41]  *Tavern on the Green*, 427 B.R. at 238, 241.

[42]  *Shubert v. Columbia Pictures Corp.*, 189 Misc. 734, 735, 72 N.Y.S.2d 851 (Sup. Ct. N.Y. Cnty.1947), *aff'd*, 274 A.D. 751 (1st Dep't 1948).

[43]  *See, e.g.*, Act of Dec. 19, 2014, Pub. L. No. 113-287, § 3, 128 Stat. 3193 (codified at 54 U.S.C. § 302106 ("Retention of name")); *cf.* Complaint, *DNC Parks & Resorts at Yosemite, Inc. v. United States*, 133 Fed. Cl. 314 (Fed. Cl. Sept. 17, 2015) (No 15-CV-010304).

never has been the law of New York.[44]  The ersatz substantive rules Propco gleans from *Stogop* and its related cases are in reality a mere reflection of the particular contractual relationships before the courts in those disputes.  Meanwhile, the prevailing rule is clear: "the party claiming ownership must show a clear manifestation of intent by [the prior owner] to transfer ownership of trademark rights."[45]  The idea that the trademark to a building's name typically "runs with" the building, while perhaps of some substantive effect in the absence of an unambiguous writing, cannot supersede the fundamental purposes of New York contract law.[46]

In sum, Propco has not plausibly alleged any ownership in THE SURREY trademark and thus lacks Article III standing to pursue this action.[47]  The Circuit has suggested that permitting parties who do not in fact own the trademark(s) in question – even if they have control over the marks – would raise constitutional concerns.[48]  It has made clear that the "minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim," either "originally held by the plaintiff" or "received through an assignment," except in some limited

---

[44]
    *Shubert*, 189 Misc. at 735.

[45]
    *Trs. of Columbia Univ. in City of N.Y. v. Encyclopaedia Iranica Found.*, No. 19 Civ. 7465 AT KNF, 2020 WL 5994986, at *3–4 (S.D.N.Y. Oct. 8, 2020) (citations and internal quotation marks omitted).

[46]
    *See, e.g.*, *People ex rel. New York Cent. & H. R. R. Co. v. Walsh*, 211 N.Y. 90, 100 (1914) ("The ascertainment of the substantial intent of the parties is the fundamental rule in the construction of all agreements.").

[47]
    *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that a plaintiff must demonstrate injury-in-fact to have constitutional standing).

[48]
    *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 80 (2d Cir. 2013).

18

circumstances where an injured party cannot assert its own interests.[49]  Accordingly, the first and second causes fail to state claims upon which relief may be granted and Propco lacks standing to pursue the third.

*The Counterclaim*

Denihan's counterclaim seeks a declaration, which even if granted would bind only Propco, that it owns THE SURREY mark.  An actual case or controversy is one that is "real and substantial . . . admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[50]  Here, the Court already has concluded that the unambiguous text of the SPA conveyed no intellectual property to Propco.  Thus, no controversy remains as between the parties to this action as Denihan's requested relief would have no effect on the prospect of liability to Propco in connection with the mark at issue and the Court therefore lacks subject matter jurisdiction over the counterclaim.  Even asssuming that it had jurisdiction over the counterclaim, the fact would remain that a declaratory judgment is a discretionary remedy.[51]  Allowing Denihan's counterclaim to survive under these circumstances would be an inappropriate exercise of that discretion, as no useful purpose would be served by doing so.

---

[49]  *Id.* at 80-81 (quoting  *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir.2008)).

[50]  *F.X. Maltz, Ltd. v. Morgenthau,* 556 F.2d 123, 125 (2d Cir.1977) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, (1937)).

[51]  *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

*Conclusion*

For the foregoing reasons, Denihan's motion to dismiss the complaint (Dkt. 26) is GRANTED in all respects, the first two causes of action for failure to state a claim upon which relief may be granted and the third for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Denihan's counterclaim is dismissed on the Court's own motion for the reasons stated above. The Clerk shall enter judgment and close the case.

SO ORDERED.

Dated:        July 13, 2022

_____
Lewis A. Kaplan
United States District Judge